UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KELLY BUTLER,<br><br>        Plaintiff,<br><br>v.<br><br>HOMESERVICES LENDING LLC, *et al.*,<br><br>        Defendants. | Case No. 11-cv-2313-L(MDD)<br><br>**ORDER:**<br><br>**(1) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DOC. 24], AND**<br><br>**(2) DENYING DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT [DOC. 30]** |

On June 7, 2011, Plaintiff Kelly Butler commenced this action to recover unpaid wages under both California and federal law against Defendants Homeservices Lending LLC ("HSL") and Doherty Employment Group Inc. ("Doherty"). Now pending before the Court are the parties' cross-motions for summary judgment.

The Court found these motions suitable for determination on the papers submitted and without oral argument. *See* Civ. L.R. 7.1(d.1). (Docs. 44–45.) For the following reasons, the Court **DENIES** Plaintiff's motion for summary judgment (Doc. 24), and **DENIES** Defendants' cross-motion for summary judgment (Doc. 30).

//

## I. BACKGROUND[1]

From January 2008 through August 2010, Defendants employed Plaintiff as a Home Mortgage Associate ("HMA"). (JSUF ¶ 61.) As an HMA, Plaintiff's responsibilities included processing loans for several Home Mortgage Consultants ("HMC") and generally assisting HMCs with the administration of their mortgage files. (*Id.* ¶ 70.) Danny Valentini was HSL's branch manager, and Michael Yip was the area administrator under Mr. Valentini. (*Id.* ¶¶ 63–64.) Mr. Valentini's region included approximately eight HMAs including Plaintiff. (*Id.* ¶ 64.) Throughout her employment at HSL, Plaintiff was in communication with Mr. Valentini and Mr. Yip via phone, email, and text message before and after work hours. (*Id.* ¶ 65.)

HSL maintained a written policy requiring pre-approval for overtime work, which included a policy to pay employees for all overtime hours worked and recorded, even if an employee should or could have obtained pre-approval but failed to do so. (JSUF ¶ 2–3.) The policy also stated that "[f]ull time employees are generally expected to work 8:00 a.m. to 5:00 p.m. unless agreed to otherwise by management," and "[l]unch breaks are scheduled for one hour and must be taken." (*Id.* ¶¶ 91, 97.) HSL used Doherty, an outside human-resources firm for all of its human resource needs, including employee time-keeping and payroll. (*Id.* ¶ 66.) HMAs, including Plaintiff, submitted their times directly to Doherty by completing time cards online via Doherty's website. (*Id.* ¶ 86.) HSL's employees were instructed in various handout materials to accurately enter all time they worked on the online DohertyHRDirect time-keeping system. (*Id.* ¶¶ 4–5.) Doherty expected that either Mr. Valentini or someone else would review time cards before they were submitted. (*Id.* ¶ 67.)

Plaintiff learned of HSL's overtime policy requiring pre-approval for overtime work a

---

[1] Most of the following factual background is taken from the parties' Joint Statement of Undisputed Facts ("JSUF"). (Doc. 41.) There are some facts of particular individuals' testimonies that are identified as undisputed and material. (*See, e.g.,* JSUF ¶¶ 6–11.) But it is not entirely clear whether the parties meant that the testimony is undisputed or the content of the testimony is undisputed. Because much of the JSUF would be useless under the former interpretation, the Court presumes for this order that the parties meant that the content of the testimony is undisputed. Also, though Plaintiff sent a courtesy copy of her exhibits to the Court, it does not appear to have been filed on the docket. (*See* Doc. 24.) The Court nonetheless will consider these exhibits and refer to the courtesy copies that were provided.

couple weeks after she started working at HSL. (JSUF ¶¶ 10–11.) She understood that HSL's written policy required her to mark down all hours she worked. (*Id.* ¶ 7.) Early on during her tenure at HSL, after Plaintiff inputted her "actual" work hours in the time-keeping system—including substantial overtime hours that she did not get pre-approved—she received an email from Mr. Yip. (*Id.* ¶¶ 12, 80–81.) That email explained that, in the future, Plaintiff should obtain pre-approval from Mr. Valentini before working any further overtime hours. (*Id.* ¶ 13.) However, Plaintiff never asked Mr. Valentini for permission to work overtime or for clarification of HSL's overtime policy. (*Id.* ¶ 14.) Rather, Plaintiff testified that she interpreted the email to mean that recording overtime was never permitted at HSL, and felt that requesting overtime might jeopardize her job. (*Id.* ¶¶ 15–17.) And like Plaintiff, Mr. Yip testified that he did not report all of his overtime hours because he thought it would "probably affect his career." (*Id.* ¶ 84.)

On one occasion, Plaintiff testified that she complained to HSL President Michael Reza that her workload was too large, and he immediately reduced her workload. (JSUF ¶ 19.) But she did not advise him of any off-the-clock work, which amounted to an average of 28 hours of overtime per week for approximately two and a half years. (*Id.* ¶¶ 18–19.) Even though Plaintiff could come and go as she pleased, she contends that the volume of work could not have been finished in an eight-hour work day. (*Id.* ¶¶ 32, 39, 46, 75.) Plaintiff acknowledges that she took an off-duty lunch period once per week. (*Id.* ¶ 31.) Nevertheless, Defendants paid Plaintiff for all time she inputted into the time-keeping system, including all overtime hours that she recorded. (*Id.* ¶ 8.)

After receiving the email, Plaintiff only reported working hours from 9:00 a.m. to 5:00 p.m. without a lunch, even though purportedly working an average of 28 hours of overtime per week. (JSUF ¶¶ 83, 95.) She worked about twelve hours per weekday, and about eight hours on Saturdays and Sundays as needed. (*Id.* ¶ 74.) Throughout her employment at HSL, Plaintiff sometimes contacted Mr. Valentini and Mr. Yip via email, telephone, or text message before 8:00 a.m. and after 5:00 p.m. (*Id.* ¶ 76.) Plaintiff spoke with Mr. Valentini only when issues arose that neither she nor her HMC could handle. (*Id.* ¶ 58.) Mr. Yip also testified that he was

aware of work telephone conversations between Mr. Valentini and other HMAs after work hours. (*Id.* ¶ 79.) Mr. Valentini also testified that he would not know how many hours HMAs worked. (*Id.* ¶ 77.) He "never reviewed actual timecards that HMA's [sic] were required to fill out" and "no one at HSL reviewed timecards before they went to Doherty." (*Id.* ¶ 88.) Mr. Yip also did not review the HMAs' time cards. (*Id.* ¶¶ 90.) Additionally, though based in San Diego, Mr. Valentini "hardly ever" visited Plaintiff's office. (*Id.* ¶¶ 33, 45.) Mr. Reza was the only HSL executive located in Plaintiff's office. (*Id.* ¶ 34.) But the extent of Plaintiff's in-person communications with Mr. Reza were limited to "waving, saying 'hi' or . . . if there was a problem, maybe once a week, but not on a frequent basis." (*Id.* ¶ 35.)

On August 13, 2010, Plaintiff voluntarily resigned her position with HSL. (JSUF ¶ 57.)

On June 7, 2011, Plaintiff commenced this action in the Central District of California. In the complaint, she asserts six claims: (1) Violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*; (2) Overtime and Minimum Wage Violations, California Labor Code §§ 510, 1182.11, 1194, and 1198; (3) Failure to Provide Itemized Wage Statements, California Labor Code § 226; (4) Failure to Provide and/or Authorize Meal and Rest Periods, California Labor Code § 512; (5) Failure to Timely Pay Wages, California Labor Code §§ 201–03; and (6) Violation of California Business and Professions Code § 17200, *et seq.* Shortly thereafter, this case was transferred to the Southern District of California, and eventually assigned to this Court.

Both parties now move for summary judgment. Plaintiff primarily moves for summary judgment on her claims for violation of the FLSA and overtime-and-minimum-wage violations (Doc. 24); and Defendants move for summary judgment on all claims asserted against them (Doc. 30). Both motions are opposed.

## II. LEGAL STANDARD

Summary judgment is appropriate under Rule 56(c) where the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material when, under the governing substantive law, it could affect the outcome of the case. *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

A party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. The moving party can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *Id.* at 322-23. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

"The district court may limit its review to the documents submitted for the purpose of summary judgment and those parts of the record specifically referenced therein." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1030 (9th Cir. 2001). Therefore, the court is not obligated "to scour the record in search of a genuine issue of triable fact." *Keenan v. Allen*, 91 F.3d 1275, 1279 (9th Cir. 1996) (citing *Richards v. Combined Ins. Co. of Am.*, 55 F.3d 247, 251 (7th Cir. 1995)). If the moving party fails to discharge this initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159-60 (1970).

If the moving party meets this initial burden, the nonmoving party cannot defeat summary judgment merely by demonstrating "that there is some metaphysical doubt as to the material facts." *Matsushita Electric Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995) ("The mere existence of a scintilla of evidence in support of the nonmoving party's position is not sufficient.") (citing *Anderson*, 477 U.S. at 242, 252). Rather, the nonmoving party must "go beyond the pleadings" and by "the depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).

When making this determination, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. *See Matsushita*, 475 U.S. at 587. "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] he [or she] is ruling on a motion for summary judgment." *Anderson*, 477 U.S. at 255.

### III. DISCUSSION

Though the parties agree that many facts are not in dispute, their respective interpretations of those undisputed facts are very different. Plaintiff describes Defendants as willfully ignorant and maintaining a corporate culture that actively discouraged overtime in order to maximize profits on the backs of HMAs such as Plaintiff. (Pl.'s Mot. 11:11–14, 18:18–19:3.) Conversely, Defendants depict Plaintiff as an opportunistic employee who failed to record her work time in violation of company policy and failed to alert her managers of any underpayment, thereby willfully circumventing HSL's overtime reporting procedures. (Defs.' Mot. 13:15–19, 17:13–18.) With that in mind, the Court addresses each of the parties' issues presented in their respective motions below.

### A. Fair Labor Standards Act

The FLSA was enacted "to protect all covered workers from substandard wages and oppressive working hours." *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981). "Under the FLSA, no employer shall employ any of its covered employees for a work week that is longer than 40 hours, unless that employee receives as compensation for his employment at least one and a half times the regular rate for all overtime hours." *Forrester v. Roth's I.G.A. Foodliner, Inc.*, 646 F.2d 413, 414 (9th Cir. 1981) (citing 29 U.S.C. § 207(a)). "The FLSA is a remedial statute that is 'to be liberally construed to apply to the furthest reaches consistent with Congressional direction.'" *Probert v. Family Centered Servs. of Alaska, Inc.*, 651 F.3d 1007, 1010 (9th Cir. 2011) (citing 29 U.S.C. § 207(a)).

//

"[A]n employer who knows or should have known that an employee is or was working overtime is obligated to pay overtime . . . even if the employee does not make a claim for the overtime compensation." *Lindow v. United States*, 738 F.2d 1057, 1060-61 (9th Cir. 1984) (internal quotation marks and citation omitted). "However, where an employer has no knowledge that an employee is engaging in overtime work and that employee fails to notify the employer or deliberately prevents the employer from acquiring knowledge of the overtime work, the employer's failure to pay for the overtime hours is not a violation of § 207." *Forrester*, 646 F.2d at 414.

The Court finds that there are triable issues of fact as to whether Defendants had actual knowledge of Plaintiff's uncompensated overtime. Plaintiff argues that Defendants had actual knowledge of Plaintiff's uncompensated overtime as a result of phone calls, text messages, and emails that were exchanged outside normal work hours. (Pl.'s Mot. 10:27–11:1.) In response, Defendants argue that Plaintiff must prove that HSL through its managers actually knew of, or acquiesced to, a pattern or practice of off-the-clock work, and they also contend that Mr. Yip is a mere "low-level clerical assistant." (Defs.' Opp'n 6:8–21.) Defendants acknowledge Plaintiff's encounter with Mr. Reza, but wholly fail to address Mr. Valentini's potential knowledge of Plaintiff's uncompensated overtime. (*See id.* at 7:4–16.)

Mr. Valentini testified that he cannot remember one way or another whether the phone calls and text messages to and from Plaintiff outside of normal work hours were work related. (JSUF ¶ 98.) He also testified that he would not know how many hours HMAs worked. (*Id.* ¶ 77.) But Plaintiff provides evidence of email communications that appear to be work related and outside of normal work hours. (*See* Pl.'s Exs. J, K.) Furthermore, whether Mr. Yip should be classified as a "manager" also presents a triable issue of fact. Mr. Yip's title appears to be "area administrator," but neither party goes into detail to clearly define his responsibilities at HSL. Defendants contend Mr. Yip is merely Mr. Valentini's assistant, and Plaintiff provides an example that supports that contention. (*See* Pl.'s Reply 7:4–8.) When a representative of Doherty emailed both Mr. Valentini and Mr. Yip for "manager approval" before issuing a payment, Mr. Yip responded that he would have Mr. Valentini follow up, which suggests that

Mr. Yip lacked the authority to approve employee payments. It is also undisputed that Mr. Yip did not review HMA time cards. (JSUF ¶ 90.) But there are also abundant undisputed facts that suggest Mr. Yip had a supervisory role. For example, Mr. Yip emailed Plaintiff regarding the pre-approval policy for overtime (*id.* ¶ 13), and he also answered many questions via emails outside of normal work hours (Pl.'s Exs. J, K). Based on the conflicting evidence, the Court cannot conclude at this stage that Mr. Yip was a manager under the FLSA or that Defendants had actual knowledge of Plaintiff's uncompensated overtime. *See Ellerd v. Cnty. of Los Angeles*, No. CV 08-4289, 2012 WL 893608, at *4 (C.D. Cal. Mar. 14, 2012).

Similarly, the Court finds that there are triable issues of fact as to whether Defendants had constructive knowledge of Plaintiff's uncompensated overtime. Relying on *Forrester*, Plaintiff argues that Defendants had constructive knowledge of Plaintiff's uncompensated overtime, and the Court need only inquire whether the employer had the opportunity through reasonable diligence to discover that the plaintiff was working uncompensated overtime. (Pl.'s Mot. 11:24–12:9, 15:1–16:12.) Plaintiff supports her argument by directing the Court's attention to the phone calls, text messages, and emails exchanged between her and both Mr. Valentini and Mr. Yip outside of normal work hours,[2] but also the contention that "HSL knew or had every reason to know that the HMA's workload could not be done in forty hours per week." (*Id.* at 15:23–16:12.) In response, Defendants highlight the fact that Plaintiff testified that she never told supervisors that she worked uncompensated overtime, and she was never counseled or asked not to work overtime. (Defs.' Opp'n 8:13–21.) Furthermore, it is undisputed that Mr. Valentini did not review the time cards as he should have, but even if he did, that would not have notified him that Plaintiff was working uncompensated overtime. That said, the phone calls, text messages, and emails exchanged between them may show that Defendants had constructive knowledge of Plaintiff's uncompensated overtime; and as discussed above, the emails certainly suggest that possibility. But because the Court cannot make credibility determinations or weigh

---

[2] It is worth noting that neither party discusses the details of the phone, text message, and email communications between Plaintiff and Mr. Valentini and Mr. Yip.

evidence at this stage, summary adjudication is not warranted for either side on the issue of constructive knowledge. *See Anderson*, 477 U.S. at 255; *Ellerd*, 2012 WL 893608, at *5.

The existence of a culture that discourages reporting overtime may support an inference that an employer knew of its employees' failure to report overtime. *See Abbe v. City of San Diego*, Nos. 05cv1629, 06cv538, 2007 WL 4146696, at *9 (S.D. Cal. Nov. 9, 2007) (Sabraw, J.). Plaintiff argues that Defendants' corporate culture discouraged overtime. (Pl.'s Mot. 17:23–19:14.) Her argument also stems from the proposition in *Forrester* that states that an employer who is armed with knowledge of an employee's uncompensated overtime "cannot stand idly by and allow an employee to perform overtime work without proper compensation, even if the employee does not make a claim for the overtime compensation." *Forrester*, 646 F.2d at 414. Plaintiff relies on aforementioned communications with Mr. Valentini and Mr. Yip, and the contention that Mr. Valentini personally profited by suppressing overtime. Defendants counter by arguing that Mr. Yip's testimony and communications are not relevant. (Defs.' Opp'n 12:19–14:10.) For the reasons discussed above, summary adjudication is also not warranted for Plaintiff on the issue of whether there was a corporate culture that discouraged reporting overtime that imputes knowledge on Defendants. *See Celotex*, 477 U.S. at 323.

"Assuming plaintiff prevails on the question of knowledge, the issue becomes whether plaintiff has or will be able to carry his burden of proving the number of overtime hours worked during the recovery period." *Ellerd*, 2012 WL 893608, at *5. Defendant argues that Plaintiff cannot carry that burden, but Plaintiff maintains that she can. (Defs.' Mot. 6:21–13:19; Pl.'s Mot. 9:1–11:14.) However, the Court finds that it is premature to decide this issue in light of the questions of fact that exist regarding Defendants' actual or constructive knowledge. "[I]f an employer has actual or constructive knowledge that its employees are not recording all of their overtime, whatever the reason for the under-reporting might be, the employe[r] cannot sit back or stand idly by and allow the employee to under-report his time." *Ellerd*, 2012 WL 893608, at *5 (quoting *Brennan v. Qwest Comm'ns Int'l, Inc.*, 727 F. Supp. 2d 751, 762-63 (D. Minn. 2010)) (internal quotation marks omitted). In such situations, "an employee has carried out his burden [of establishing the number of off-the-clock hours worked] if he proves that he has in

fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946). "[A] plaintiff can meet this burden 'by relying on recollection alone.'" *Ellerd*, 2012 WL 893608, at *5 (quoting *Santillan v. Henao*, 822 F. Supp. 2d 284, 294 (E.D.N.Y. 2011)).

Here, Plaintiff testified that she worked an average of 28 hours of overtime per week for approximately two and a half years. (JSUF ¶ 18.) Consequently, if it is determined that Defendants had actual or constructive knowledge of Plaintiff working uncompensated overtime, Plaintiff will be able to testify to the number of hours worked and it will be Defendants' burden to refute that testimony.[3] *See Anderson*, 328 U.S. at 687-88 ("The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence."); *Ellerd*, 2012 WL 893608, at *5. But because the question of Defendants' actual or constructive knowledge is for the jury to decide here, it is premature to reach this issue.

Accordingly, the Court **DENIES** both parties' motions as to the question of Defendants' actual or constructive knowledge.[4]

### B. Meal and Rest Period

"State law obligates employers to afford their non-exempt employees meal periods and rest periods during the workday." *Brinker Rest. Corp. v. Superior Court*, 53 Cal. 4th 1004, 1018 (2012). "Labor Code section 226.7, subdivision (a)[,] prohibits an employer from requiring an employee 'to work during any meal or rest period mandated by an applicable order of the

---

[3] Based on the contents of the JSUF, it appears that the 28 hours of overtime per week is not in dispute.

[4] Plaintiff also moves for a finding that Defendants willfully violated the FLSA and that she is entitled to liquidated damages. (Pl.'s Mot. 19:15–21:4.) Because there are triable issues of fact related to that request, the cannot Court conclude at this point whether any alleged violation of the FLSA was willful or that Plaintiff is entitled to liquidated damages. *See Ellerd*, 2012 WL 893608, at *6.

Industrial Welfare Commission.'" *Id.* (footnote omitted).  "In turn, Wage Order No. 5, subdivision 11, as well as section 512 of the Labor Code, prescribes meal periods." *Id.*  In *Brinker*, the California Supreme Court held

> An employer's duty with respect to meal breaks under both section 512, subdivision (a) and Wage Order No. 5 is an obligation to provide a meal period to its employees. The employer satisfies this obligation if it relieves its employees of all duty, relinquishes control over their activities and permits them a reasonable opportunity to take an uninterrupted 30-minute break, and does not impede or discourage them from doing so. . . .  On the other hand, the employer is not obligated to police meal breaks and ensure no work thereafter is performed.  Bona fide relief from duty and the relinquishing of control satisfies the employer's obligations, and work by a relieved employee during a meal break does not thereby place the employer in violation of its obligations and create liability for premium pay under Wage Order No. 5, subdivision 11(B) and Labor Code section 226.7, subdivision (b).

*Id.* at 1040-41.

Plaintiff argues that her voluminous workload in addition to Mr. Valentini's testimony that he "wouldn't think about lunches or anything like that" demonstrates that Defendants violated the Industrial Welfare Commission ("IWC") Wage Order No. 5 and California Labor Code § 512. (Pl.'s Mot. 21:5–23:8.)  Conversely, Defendants argue that Plaintiff simply chose to skip her meal and rest periods after being given authorization and permission to freely construct her schedule as she saw fit thereby satisfying their duty to provide meal and rest periods. (Defs.' Mot. 19:19–14:23.)  Both parties support their arguments with evidence presented to the Court; Plaintiff provides deposition testimony of other employees including herself and Mr. Valentini while Defendants point to HSL's policy that permits meal and rest periods in addition to Plaintiff's own testimony that she never reported the denial of rest periods and that she could come and go as she pleased.  But that evidence creates conflicting inferences as to whether Defendants actually provided a reasonable opportunity to take breaks. *See Brinker*, 53 Cal. 4th at 1040-41.  The conflicting evidence here creates a genuine issue of material fact as to whether HSL adequately provided meal and rest periods that are in compliance with IWC Wage Order No. 5 and California Labor Code § 512.

//
//

Accordingly, the Court **DENIES** both parties' motions as to whether Defendants adequately provided meal and rest periods to Plaintiff in compliance with IWC Wage Order No. 5 and California Labor Code § 512.

### C.     Itemized Wage Statements

California Labor Code § 226 requires "employers [to] provide accurate itemized statements of wages to their employees" that contain certain statutorily mandated information. *Morgan v. United Retail Inc.*, 186 Cal. App. 4th 1136, 1143 (2010).  However, an employer is only liable for damages as a result of failing to furnish conforming wage statements to employees that "suffer[] injury as a result of a knowing and intentional failure by an employer to comply with [section 226(a)]." Cal. Lab. Code § 226(e).  Therefore, "a plaintiff must establish two elements to recover damages under section 226: (1) that a defendant's wage statements violated one of the enumerated requirements in section 226(a), *and* (2) that the violation was 'knowing and intentional' and resulted in 'injury' to the plaintiff." *Alonzo v. Maximus, Inc.*, 832 F. Supp. 2d 1122, 1134 (C.D. Cal. 2011) (emphasis in original).

"The injury requirement in section 226, subdivision (e), cannot be satisfied simply if one of the nine itemized requirements in section 226, subdivision (a) is missing from a wage statement." *Price v. Starbucks Corp.*, 192 Cal. App. 4th 1136, 1142 (2011) (citing *Jaimez v. DAIOHS USA, Inc.*, 181 Cal. App. 4th 1286, 1306 (2010)). "[T]he statute requires that an employee may not recover for violations of section 226, subdivision (a) unless he or she demonstrates *an injury* arising from the missing information." *Id.* at 1142-43 (emphasis in original).  "[T]he types of injuries on which a § 226 claim may be premised include the possibility of not being paid overtime, employee confusion over whether they received all wages owed them, difficulty and expense involved in reconstructing pay records, and forcing employees to make mathematical computations to analyze whether the wages paid in fact compensated them for all hours worked." *Ortega v. J.B. Hunt Transp., Inc.*, 258 F.R.D. 361, 374 (C.D. Cal. 2009) (internal quotation marks omitted).

//

Defendants argue that Plaintiff's § 226 claim fails as a matter of law because she fails to allege that she "suffered injury" as a result of HSL's "knowing and intentional" violation of § 226. (Defs.' Mot. 17:19–23.) Plaintiff responds by arguing that she suffered a mathematical injury because after Defendants permitted her to work uncompensated overtime without reviewing or correcting the time sheets, they claim Plaintiff's emails were destroyed leaving her with the "costly task of relying on an expert economist to reconstruct her hours based on a handful of emails and her cellular phone records." (Pl.'s Opp'n 21:17–22:4.) But more importantly, because this claim arises from unreported and uncompensated overtime, the Court cannot determine whether Defendants are liable under § 226 without first determining whether they indeed failed to compensate Plaintiff for overtime. In other words, if Defendants are found liable for failing to compensate for overtime, then they could also be liable under several of the enumerated § 226 injuries in *Ortega*, such as the possibility of not being paid overtime, confusion over whether Plaintiff received all wages owed her, and forcing Plaintiff to make mathematical computations to reconstruct her overtime hours. *See Ortega*, 258 F.R.D. at 374. However, if Defendants are not liable for failing to pay overtime—and assuming that the actual wage statements contained the nine itemized requirements in § 226—Plaintiff was paid for everything that she reported, and Defendants would not be liable under § 226.

Because Plaintiff's FLSA and overtime claims remain unresolved, so does her § 226 claim. Therefore, the Court **DENIES** Defendants' motion as to the itemized-wage-statement claim. Additionally, Plaintiff also moves for summary judgment on this claim but bases it on her prevailing on her FLSA and overtime claims. (Pl.'s Mot. 23:9–18.) As discussed above, she has not yet prevailed on those claims, thus the Court also **DENIES** Plaintiff's motion as to her itemized-wage-statement claim.

### D.   Timely Pay Wages and California Business and Professions Code § 17200

Plaintiff and Defendants also base their timely-pay-wages arguments on each respective party prevailing on the FLSA and overtime claims. (Pl.'s Mot. 23:9–19; Defs.' Mot. 23:15–24:16.) In addition, Defendants base their § 17200 argument on prevailing on all of

Plaintiff's "primary claims." (Defs.' Mot. 24:17–24.) As discussed in detail above, neither party prevails on any of the claims that Plaintiff asserts. Therefore, the Court **DENIES** both parties' motion as to the claim for Defendants' alleged failure to timely pay wages, and **DENIES** Defendants' motion as the § 17200 claim.

### IV.  CONCLUSION & ORDER

In light of the foregoing, the Court **DENIES** Plaintiff's motion for summary judgment (Doc. 24), and **DENIES** Defendants' cross-motion for summary judgment (Doc. 30).

**IT IS SO ORDERED.**

DATED: March 26, 2013

_____
M. James Lorenz
United States District Court Judge

COPY TO:

HON. MITCHELL D. DEMBIN
UNITED STATES MAGISTRATE JUDGE

ALL PARTIES/COUNSEL