UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KELLY BUTLER,<br><br>   Plaintiff,<br><br>v.<br><br>HOMESERVICES LENDING LLC,<br>Doing Business As HOMESERVICES;<br>and DOHERTY EMPLOYMENT<br>GROUP, INC.,<br><br>   Defendants. | Civil No. 3:11-CV-02313-L-MDD<br><br>**ORDER DENYING PLAINTIFF'S MOTIONS *IN LIMINE* [Docs. 77, 78, 79, 80, 81, 82, 83]** |

This matter is set for trial on December 3, 2013. In preparation for trial, Plaintiff Kelly Butler has filed motions in limine that have been fully briefed. The Court finds these motions suitable for determination on the papers submitted and without oral argument pursuant to Civil Local Rule 7.1(d)(1).

**I.    BACKGROUND[1]**

Plaintiff Kelly Butler was employed as a "Home Mortgage Assistant" (HMA) by Defendants Homeservices Lending LLC ("HSL") and Doherty Employment Group, Inc. from

---

[1] The factual background is taken from the parties' Joint Statement of Undisputed Facts ("JSUF"). (Doc. 41.)

approximately January 2008 to August 2010.[2] (JSUF ¶ 61.) As an HMA, Plaintiff was responsible for processing loans for Home Mortgage Consultants ("HMC") and assisting HMCs with the administration of their mortgage files. (*Id.* ¶ 70.) Throughout her employment with Defendants, Plaintiff was in communication with HSL's branch manager and area administrator via phone, email, and text messages before and after work hours. (*Id.* ¶ 65.) However, neither the branch manager nor the area administrator reviewed the actual timecards that HMAs were required to fill out. (*Id.* ¶ 88, 90.)

HSL's overtime policy required that employees obtain pre-approval for overtime work and, stated that even if employees failed to obtain pre-approval, they would still be paid for all overtime hours worked and recorded. (JSUF ¶ 2–3.) The policy also states that "[f]ull time employees are generally expected to work 8:00 a.m. to 5:00 p.m. unless agreed to otherwise by management." (*Id.* ¶ 91.) Various handout materials also instructed HSL's employees to accurately enter all time worked on the online time-keeping system. (*Id.* ¶ 4–5.) Plaintiff learned of this overtime policy a couple weeks after she started working at HSL and she understood that it required her to report all hours she worked. (*Id.* ¶ 7, 10–11.)

After inputting her "actual" work hours in the time-keeping system early on during her time with HSL, which included substantial overtime hours that she did not get pre-approval for, Plaintiff received an email explaining that she should obtain pre-approval for overtime hours in the future. (JSUF ¶ 12–13, 80–81.) Despite this email, Plaintiff never asked for permission to work overtime or for clarification of HSL's overtime policy. (*Id.* ¶ 14.) Rather, Plaintiff interpreted the email to mean that recording overtime was never permitted and she did not want to jeopardize her job by requesting overtime. (*Id.* ¶ 15–17.) After receiving the email, Plaintiff only reported working from 9:00 a.m. to 5:00 p.m. without a lunch, even though she alleges that she was working an average of 28 hours of overtime per week. (*Id.* ¶ 83, 95.) On August 13, 2010 Plaintiff voluntarily resigned from her position with HSL. (*Id.* ¶ 57.)

On June 7, 2011, Plaintiff filed this action for damages, restitution, and injunctive relief

---

[2]Defendant Doherty Employment Group, Inc. has been dismissed with prejudice from this action pursuant to a joint motion to dismiss filed on November 4, 2013. (Doc. 93.)

against Defendants under the Fair Labor Standards Act ("FLSA") and California state law provisions.[3] Pursuant to an order granting the parties' joint motion to dismiss filed on November 4, 2013, the only remaining claim for relief at issue at trial is Plaintiff's claim under the FLSA against Defendant HSL.  (Docs. 92, 95.)

## II.     Plaintiff's Motions in Limine:

### A. To Exclude Argument Regarding the Application of the *Seever* Standard of Proof

Plaintiff requests an order prohibiting Defendant from making arguments regarding evidence of unpaid overtime hours worked based on the standard from *Seever v. Carrols Corp.*, 528 F.Supp.2d 159 (W.D. N.Y. 2007) (setting forth a "specificity" standard of proof).  (Pl.'s Mot. 1:24–26.) Plaintiff argues that the *Seever* standard is irrelevant because, in the Court's order denying the parties' cross-motions for summary judgment (*see* Doc. 57.), this Court established that the "law of the case" is set forth in *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946) (articulating a "just and reasonable inference" standard). In light of this, Plaintiff argues that Defendant must be "excluded from arguing that Plaintiff has no diaries, calendars, or other written documents memorializing unpaid overtime worked."  (Pl.'s Mot. 2:17–20.) Plaintiff's argument is unpersuasive. In denying the motions for summary judgment, this Court made no rulings as to the applicable standard of proof in this case. Moreover, the Court's order neither mentions *Seever* nor compares the applicability of the two standards. Finally, Plaintiffs fail to explain how the Court could craft an order to prevent Defendant from arguing under a certain standard. Noticeably lacking from Plaintiff's motion is any cogent explanation as to what evidence would need to be ordered excluded.

---

[3] Plaintiff's complaint sets forth the following claims: (1) failure to pay overtime compensation in violation of the FLSA; (2) failure to pay overtime compensation and minimum wage in violation of California law; (3) failure to provide accurate itemized wage statements in violation of California law; (4) failure to provide rest breaks and meal periods in violation of California law; (5) failure to timely pay wages in violation of California law; and (6) unfair practice under the California Unfair Competition Act.

Plaintiff's argument under Fed. R. Evid.403 fails for the same reasons. At this time, the Court has not determined which standard applies. Accordingly, the Court **DENIES** Plaintiff's motion to exclude arguments regarding the applicability of the *Seever* standard.

### B. To Exclude Evidence on Defendant's Equitable Affirmative Defenses of Estoppel, Waiver, Unclean Hands, and Laches

Plaintiff seeks to exclude argument, testimony, and evidence relating to Defendant's affirmative defenses of estoppel, waiver, unclean hands, and laches.[4] Specifically, Plaintiff argues that these equitable defenses are not appropriate defenses to FLSA claims. (Pl.'s Mot. 2:16–25.)[5] This argument, however, is inappropriate for a motion in limine. As Defendant argues, motions in limine are not intended to serve as a substitute for summary judgment motions. (' Opp'n 4:4–15.) Motions in limine are limited to rulings on the admissibility of evidence, not for obtaining judgment rulings. *Engman v. City of Ontario*, 2011 U.S. Dist. LEXIS 66128, *24 (C.D. Cal. June 20, 2011). Accordingly, the Court **DENIES** Plaintiff's motion in limine to exclude argument, testimony, and evidence on Defendant's affirmative defenses.

### C. To Exclude Evidence Regarding "Falsifying Timesheets"

Plaintiff seeks to exclude evidence that she "'falsified' her employee records by submitting time sheets that omitted her overtime hours." (Pl.'s Mot. 1:21-24) Alternatively, Plaintiff argues that admitting this evidence would be unfairly prejudicial because it "is intended by Defendants to unfairly cas[t] Plaintiff in a bad light." (Pl.'s Mot. 3:27-4:1.) Defendant argues

---

[4] Defendant does not intend to put on evidence of the affirmative defense of laches. (Def.'s Opp'n 1, n. 1.)

[5] Although Plaintiff cites to a number of district courts in the Ninth Circuit finding that "the equitable defenses of waiver, estoppel, laches, and unclean hands, are not appropriate defenses to FLSA claims," these courts were not ruling on motions in limine. *See, e.g.*, *Bailon v. Seok AM #1 Corp*, No. C09-05483, 2009 WL 4884340, at *5 (W.D. Wash. 2009) (ruling on a motion to dismiss); *Fleming v. Carpenters/Contractors Cooperation Comm.*, 843 F. Supp. 323, 328 (S.D. Cal. 1993) (ruling on a motion to strike affirmative defenses).

that such evidence is a relevant "factor to consider" in determining whether they should have known Plaintiff was working overtime hours, and that such evidence also "goes to her credibility." (Def.'s Mot. 1:7-12.)

Evidence that Plaintiff falsified her time sheets is relevant as to whether Defendant had actual or constructive knowledge of Plaintiff's alleged overtime hours worked. This evidence is relevant because deliberately keeping this information from the Defendant makes it less likely that the Defendant had actual or constructive knowledge of it. Although this evidence may be prejudicial to Plaintiff, it is not unfairly prejudicial subject to exclusion in this case.

Accordingly, the Court **DENIES** Plaintiff's motion in limine to exclude testimony and/or evidence of Plaintiff's falsification of her timesheets.

**D. To Exclude Evidence Related to Defendant's Overtime Policy**

Plaintiff argues that "presentation of any testimony and/or evidence relating to Defendants' corporate policy on payment of overtime to employees" should be excluded "as it would constitute an improper attempt at justifying nonpayment of Plaintiff's earned and unpaid overtime." (Pl.'s Mot. 1:21-23.) Alternatively, Plaintiff argues this evidence should be excluded because it will "constitute a waste of valuable time at trial" and "the jury will undoubtedly interpret Plaintiff's alleged non-compliance with the official corporate policy as a defense to Plaintiff's claim, which it cannot be as a mater of law." (Pl.'s Mot. 5:25-6.)

Defendant's overtime policy is not relevant to the extent it is used to justify nonpayment to Plaintiff, but it is relevant to the extent it is used to show what Defendant knew or should have known. Defendant's overtime policy requires that an employee obtain pre-approval for overtime hours. (JSUF ¶ 2.) However, the policy also provides that employees would be paid for recorded overtime hours worked even if no pre-approval was obtained. (Id. ¶ 3.) This supports the inference that one who does not ask for pre-approval or report overtime hours has not worked overtime hours. This makes it less likely that Defendant had actual or constructive knowledge that Plaintiff worked overtime hours when she did not comply with the policy.

Additionally, the probative value of this evidence is not substantially outweighed by any

danger of unfair prejudice. Plaintiff's suggestion that "the jury will undoubtedly interpret Plaintiff's alleged non-compliance with the official corporate policy as a defense to Plaintiff's claim" (Pl.'s Mot. 5:25-6) lacks merit.

The Court **DENIES** Plaintiff's motion in limine to exclude testimony and/or evidence of Defendant's overtime policy.

### E. To Exclude Evidence Related to Plaintiff's Reasons for not Following Defendant's Overtime Policy

Plaintiff seeks to exclude "testimony and/or evidence relating to why Plaintiff did not follow or otherwise comply with Defendant's corporate policy on payment of overtime to their employees." (Pl.'s Mot. 1:22-25.) Alternatively, Plaintiff argues such testimony and/or evidence should be excluded because "[t]he jury will undoubtedly interpret Plaintiff's alleged non-compliance with the official corporate policy as a defense to Plaintiff's claim, which it cannot be as a matter of law." (Pl.'s Mot. 4:4-10.)

However, this testimony and/or evidence is relevant for both Plaintiff and Defendant. The existence of a culture that discourages reporting overtime may support an inference that an employer knew of its employees' failure to report overtime. *See Abbe v. City of Dan Diego*, Nos. 05cv1629, 06cv538, 2007 WL 4146696 at *9 (S.D. Cal. Nov. 9, 2007) (Sabraw, J.). Plaintiff has argued that Defendant's corporate culture discouraged reporting overtime. (Doc. 24 17:23-19:14). To the extent that this argument is strengthened, it is more likely that Defendant knew or should of known Plaintiff worked unreported overtime hours. Conversely, to the extent this argument is weakened or arguments are made that Plaintiff was otherwise motivated, it becomes less likely that Defendant knew or should have known Plaintiff worked unreported overtime hours. Therefore, Plaintiff's reason for not recording her hours is relevant. Furthermore, there is no indication that allowing this testimony and/or evidence will be unfairly prejudicial. As explained above, Plaintiff's suggestion that "the jury will undoubtedly interpret Plaintiff's alleged non-compliance with the official corporate policy as a defense to Plaintiff's claim" is incorrect.

Accordingly, the Court **DENIES** Plaintiff's motion in limine to exclude testimony and/or evidence of Plaintiff's reasons for not following Defendant's overtime policy.

**F. To Exclude All Testimony of Home Mortgage Assistants Other Than Plaintiff Regarding Compliance With Overtime Policy of Homeservices**

Plaintiff argues that the compliance of other HMAs with Defendant's overtime policy is irrelevant to whether or not Defendant knew that Plaintiff was working uncompensated overtime because HMA work is not "reasonably standardized." (Pl.'s Mot. 3:3–5; Pl.'s Reply 3:25–4:26.) In the alternative, Plaintiff argues that this testimony must be excluded pursuant to Federal Rule of Evidence 403 because "[t]he clear danger is that the Jury will assume that the other HMAs in other offices obtained compensation for all their hours and therefore Plaintiff could have done the same." (Pl.'s Mot. 4:12–17.) Conversely, Defendant argues that such testimony is highly relevant to show "that (1) the tasks Plaintiff performed should have only taken 40 hours per week; (2) overtime was widely approved to others; and (3) there was no widespread fear among employees that they would be fired if they ever reported overtime." (Def.'s Opp'n 4:6–11.)

Defendant's overtime policy requires requesting pre-approval for anticipated overtime hours and, in the alternative, simply reporting overtime hours worked. Testimony regarding an HMA's compliance with this policy, at least with respect to reporting hours, is relevant to an HMA's workload, whether Defendant knew an HMA worked overtime hours, and whether there was a widespread fear of being fired for reporting overtime. As such, another HMAs compliance with Defendant's overtime policy is relevant to whether or not Defendant could have or should have known that Plaintiff worked overtime. The probative value of such testimony is not outweighed by Plaintiff's concerns of misleading the jury. Accordingly, the Court **DENIES** Plaintiff's motion in limine insofar as it aims to exclude the testimony of other HMAs regarding their compliance with Defendant's overtime policy.

**G. To Exclude Testimony of Defense Expert Rob Crandall**

Federal Rule of Evidence 702 allows expert opinion testimony "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to

determine a fact in issue." "Expert testimony is admissible pursuant to Rule 702 if it is both relevant and reliable." *Mukhtar v. Cal. State. Univ.*, 299 F.3d 1053, 1063 & n. 7 (9th Cir. 2002) (internal quotation marks and citation omitted).

Plaintiff seeks to exclude the testimony of Defendant's expert on the grounds that his opinion is "unreliable because (1) it is not based on any information regarding [Plaintiff]; (2) it considers the ability of other HMAs who are not similar to [Plaintiff] to comply with Defendants' overtime policies in violation of applicable law; [and] (3) it is based on the alleged ability of HMAs other than [Plaintiff] to comply with Defendants' overtime policy." (Pl.'s Mot. 0:25–1:2.) Specifically, Plaintiff argues that the expert's testimony is unreliable because "the report is based upon flawed methods of calculating the uncompensated overtime," including that the report is based on the "overtime records" of HMAs other than Plaintiff and on the number of loans they processed. (Pl.'s Mot. 2:13–15; 3:2–25.) As Plaintiff does not dispute the qualifications of the expert, her argument is premised on the inadmissibility of testimony from other HMAs. (*See* Pl.'s Mot. 3:1–26.) As discussed above, the Court does not find testimony from other HMAs about their compliance with Defendant's overtime policy inadmissible; therefore, Plaintiff's argument that the expert's report is based on inadmissible evidence fails.

Plaintiff also argues that the expert's testimony is irrelevant because it is based on the number of loans processed by HMAs, whereas Plaintiff was paid based on the number of hours she worked. (*See* Pl.'s Mot. 4:6–10, 22–26.) Conversely, Defendant argues that the expert's testimony is highly relevant, especially as it helps to establish the number of overtime hours Plaintiff worked. (Def.'s Opp'n 6:5–11.) Given that there are triable issues of fact as to whether Defendant had knowledge of Plaintiff working uncompensated overtime, excluding the experts testimony would effectively preclude Defendant from rebutting Plaintiff's recollection of her hours worked and her argument that she was dissuaded from reporting overtime. Moreover, while the number of loans each HMA processed might not be the sole factor in determining the number of hours worked, it is relevant, especially given that Plaintiff failed to report the overtime hours she allegedly worked. Accordingly, the expert's testimony is relevant to the issues at hand.

In light of the foregoing, the Court **DENIES** Plaintiff's request for a *Daubert* hearing and

the motion in limine to exclude the expert testimony of Rob Crandall.

## III. CONCLUSION & ORDER

In light of the foregoing, the Court **DENIES** Plaintiff's motions in limine.

**IT IS SO ORDERED.**

DATED: November 27, 2013

_____
M. James Lorenz
United States District Court Judge